Good morning, Your Honors. May it please the Court, Deputy Attorney General Pamela V. Hooley, on behalf of the Warden in this case, who seeks reversal of the District Court's order because it wasn't based on Supreme Court authority. I understand the Court's position on that, but the Warden is firm that under AEDPA, the clear language of the statute says this Court should be looking at Supreme Court authority. And in the District Court – Well, the issue – the issue isn't the D1 piece of the statute. It's the D2 piece, which has to do with facts. So that's – those cases are a given for our panel. So I'd appreciate your talking to us about what the evidence was that allows a finding that there was some evidence of current dangerousness. First, if I may, understanding that the Court is focusing on the state law, a D2 analysis only applies if there are actually resolution of disputed facts. In this case, what the state courts do is apply the sum evidence test, which is a legal conclusion. One can argue whether that's a legal conclusion or a factual conclusion. Our cases are under D2 because whether there's evidence can be viewed as a factual determination. We understand that you're not giving up your right to argue that those cases are wrong, that it would be more helpful, to me at least, if you would tell us what evidence met the sum evidence standard to allow that finding. Well, and in that, too, if you can incorporate, have you – you know, have you waived that? Any challenge to the District Court's determination that there is not sum evidence by failing to raise it in your briefs? No, Your Honor, because the underlying question is that the decision wasn't based on any clearly established Federal law. There's no – Well, you picked your poison, but by picking your poison, you know, a lot of times people take alternate positions. They don't throw all their eggs in one basket. And if you don't win where you threw all your eggs, have you waived the other argument? I believe that's still subsumed in examining whether the state court's decision was unreasonable under AEDPA. And if this Court is going to get into the sum evidence test, then in order to do that, it has to look at whether the state court's unreasonably applied the test. And so that still does fall within the parameters of AEDPA. So the Court should be able to get there if the underlying question is, was the state court decision unreasonable? And given the law at the time, the state court cited Dannenberg. So you don't really talk about sum evidence, though, in your brief? No, there's no reference to sum evidence. So what is the sum evidence that you're now going to talk about? The sum evidence that I'm now going to talk about is the sum evidence that the magistrate judge actually agreed existed in the record. There was no dispute, according to the magistrate judge, about the nature of the commitment offense. There was no dispute about the nature, the existence of an unstable social history and a juvenile arrest record. And there was no dispute that the board properly considered the ---- So did he have any one-fifth things after in prison? Does he have any behaviors, bad behaviors after the offense? One thing that the court ---- not the court, rather, the board discussed, the court did not. And again, reiterating that the focus should be on what the court did, but the board did discuss inconsistencies with his statements which occurred after the offense. Well, let me ask you about that. This is a bad crime, and it appears to be ---- it seems like if he wanted to say that he had a reason to kill one person, it wasn't the person that he killed, that he ---- the first person that he got in a fight with, he doesn't kill. Then later, it seems to be sort of a gratuitous killing of the person that's unconscious in the backseat, right? That's correct. An unconscious person who ---- Well, you know, I guess the ---- he does take responsibility. He says, I was young, I was drunk, I don't, you know, I really ---- I feel terrible. How do you really explain something that's not explainable? That's ---- I mean, there are other than that, you know, it's what do you tell someone that, yeah, he admitted he killed him, and he doesn't really have a good reason of why he killed him, which doesn't satisfy us, but how do you explain that? I mean, there isn't a good reason. But is he supposed to say, I killed him because I think it's fun to kill people, and then that would help? No, Your Honor. I mean, he basically says, I was drunk, I don't know why I killed him, and I shouldn't have. It isn't that clear to me, but the district attorney in giving his statement, which Mr. Madrid had an opportunity to respond to, it's at excerpts 102 to 109, pointed out that at one point, one of the murders was because the person, he was frustrated because he couldn't speak Spanish, yet with the second person, that was the assault rather, not the murder, with the second person, he was upset because of the people they picked up, and his denying responsibility for that. He doesn't have a good reason for why he did what he did, and that's why he's in prison. So how do you come up with a good reason for an act that there's no good reason for? I guess that's what I'm, you know, it's one thing if, say, at the time, you completely alter, you know, if now you say, I wasn't there, you know, I'm wrong, you know, that's obviously a big switch. You know, I don't know how you could have, there would be no reason that someone could ever tell me that would be a good reason for killing that man. He didn't have a good reason. That's why he's in prison. So I'm just wondering how we can require someone to come up with a good reason for an act that there's no good reason for. I don't think we, that, that isn't for me to say. That's for us to look back to what the state courts did under the state of the law, and that gets back to giving deference to a decision that Greenholts has recognized is one that's a plethora of imponderables. And in this case. Well, if you can go back to Greenholts, then you're home free. Unfortunately, California, the Ninth Circuit, and everyone has made a whole mess of this that we have to wade through. And so I don't, you know, I know that your position is to go back to Greenholts, but I think Judge Graber has said, you know, we don't exist in a vacuum, and even if we don't agree with Ninth Circuit precedent, we ought to, you know, we have to follow it. I'm understanding that. But my point with reference to Greenholts was what you're doing is you're looking back at a decision that is entitled to deference in the first instance. A deferential decision that was reviewed under a deferential standard of judicial review by three state courts. Overlaying AEDPA on that, that is a, what's, what's been characterized then as dual deference to a decision that's looking at judging whether someone's suitable for parole. And at the law at the time, which is what AEDPA requires we look at, the law at the time was Dannenberg. And the Dannenberg standard. Now, this guy's out, right? Yes, he is out. He got out. So apparently, he came up with a better reason why he did something that there's no reason for. But so you're claiming this is, if we would affirm the district court, is this, is, is your argument concerning Madrid serving a five-year parole period moot? No, it's not, Your Honor, because by affirming it, well, by affirming it, I lose. The reason the case isn't moot and why we're here today is because we want to assure that Mr. Madrid does serve his full statutory parole period. And you want to start the parole from when he was actually paroled, not from when the court said he should have been paroled. That's correct, February of 2010, because the parole period and the period of incarceration are separate periods with separate reasons for their existence. As U.S. v. Williams recognized, a parole period shouldn't be shortened because of perhaps excess time within prison. They're separate interests. And windfalls aren't to be given to inmates who get relief in habeas. They should be put back where they would have been otherwise. And in this circumstance, at best, if he'd gotten a grant in 2006, the governor would have been able to consider it. He might have gotten out, and then he would have had to serve his full statutory parole period. That's a separate issue with which the Federal courts shouldn't interfere in the, as was recognized in Chioino. And so on that basis, the court, the case is not moot, and the decision should be reversed because it's not based on clearly established Federal law, and the remedy interferes with the State's administration of justice. Thank you. You have a few seconds for rebuttal when the time comes, if you wish to take it. We'll hear from Ms. Knox. Good morning. Again. Again. Federal rule of appellate procedure could not be more clear. Rule 21.89 says that the appellant must raise each issue separately and distinctly, and it must contain a contention and reasons for them with citations to authorities and parts of the case. And that's what the Federal rule of appellant relies. This Court has said in numerous cases that any issue not raised in the briefing is waived. In Rattlesnake Coalition So, let me just short-circuit this by making sure I understand your position. You are, in a sense, responding to the questions that I asked and the questions that Judge Callahan asked, that any issue as to whether there is, in fact, some evidence is irrelevant because that has not been raised as an issue on the appellant appeal. Right. And one of the things that makes it clear why that is the rule is we have an appellant court asking a bunch of questions about facts because you cannot tell from this briefing what the facts were. Well, we've read the parole board's discussion, and the parole board's discussion to me was concerned about a present failure to acknowledge the extent of previous wrongdoing, which is potentially relevant. But I understand your position. I'd like your comment on whether you agree or disagree about mootness, which is a jurisdictional question. Would the period of, well, would the ending date of supervised release be Yes. Okay. That's the only reason it's not moot. Okay. So it's not moot. But, see, that's another issue that isn't raised on appeal. Well, we have to consider jurisdiction on our own. No. Excuse me. I misspoke. I don't need jurisdiction. Obviously, the mootness and in our supplemental briefing, the State clearly said why it wasn't moot, and I agreed in the supplemental briefing. Right. But what isn't raised is any question about the remedy. In fact, the very argument that the Attorney General makes as to why the case isn't moot is because the district court applied a remedy that required credit against his parole term. They have not raised an issue about the remedy being wrong. They raised two and only two issues in their briefing, in both their opening brief, which is really the only place you can raise an issue, but in their reply brief, too, the only issues being no federal liberty interest and some evidence isn't required. And as this Court has already noted, those issues are foreclosed at this point. There's nothing the panel can do. Well, let's take it a step further, though, that the Attorney General wants to go back to that you only have to provide due process. And we've explained that we have, you know, the complicated California cases and Ninth Circuit precedent. So in terms of why shouldn't we remand this to the district court to look through the correct lens, because there have been cases that, you know, have come out since his case was decided that have clarified — well, I don't know whether you can say they've clarified, but there's a number of, you know, Hayward II, you know, there's some California cases about talking what the standard is. Well, the district court did decide the issue. The district court looked at the facts and decided whether there was evidence that supported current risk. The district court did do it, and he did do it under the AEDPA. But quite aside from the district court doing it or not doing it, why would you remand it? They haven't raised an issue challenging it. Well, wait, wait, wait, wait, wait. Lower the decibels, you know. I'm loud in general. I know you're excited, but there are reasons we might. So tell me why not as opposed to posing it, and why would we? Because there have been cases that have been decided that the district court did not have the benefit of. There are always cases between a district court ruling and an appellate court ruling that the district court doesn't have the benefit of. There are no cases that have occurred that have changed the law in any substantial way except to make it clear the petitioner was right all along. Let me see if I can. Your position is that no case that has come out since the district court issued its decision is actually inconsistent with what the district court held in this case? That is true. Okay. And if that's the case, then presumably there would be no need to remand. Right. Okay. Because the issue about the evidence before the parole board and whether it was it came to the standard of some evidence of current risk or not wasn't raised and hasn't been briefed, I'm not particularly in a position to go into all the details of it. I have represented Mr. Madrid for several years, including at the last couple of hearings where, in fact, he was found suitable, and eventually the governor let it stand and he got out. And so I know the facts really well. And insofar as what this court was talking about with the attorney general was the board wanted some explanation, I would note that this is exactly how the conversation came up at the hearing that's at issue, which is the 2006 hearing. The board kept saying, you know, we want an explanation. We can't understand this. And, of course, as Judge Callahan has pointed out, with this type of offense, there's probably no way to come to a full understanding of it. The board uses the term inexplicable often. This is probably one of the few instances where it truly applies. But this is what Mr. Madrid said in response to it. I could sit here and give you all kinds of reasons about suffering from lack of self-esteem issues or peer pressure issues or being 17 and full of hormones and loaded with alcohol, but to be honest, there was no reason for me to have done it. The only emotion or thought that I had at the time was anger. Now, what better understanding does a 40-year-old man who has grown into an incredibly reflective, mature person, is he supposed to have of something he did at 17? Yeah, it was something really, really terrible. He has to live with that for the rest of his life. But he's done exactly what we wanted him to do. And so to the extent... Your argument is, obviously, he doesn't justify what's wrong. He explains it the best anybody will ever be able to explain it. And, of course, it's entirely consistent with what the psychologist had said about this man for a decade by 2006. They had been saying that this man is a truly mature, reflective man who's gotten control of his alcohol problem. He has grown up the way we hope 17-year-olds do. And against all odds of growing up inside prison when you're 17 years old, he did it really well. You know, it's what's frustrating about these cases to me, is that to the extent the parole board was talking about anything, they were talking about the crime. It's what they denied him for. Their very language in denying him is, this is all about the commitment offense and how terrible this is. And, yes, it was terrible. But the idea that there was some evidence in this record when this is who the man was is ridiculous. But I just encourage the Court that more important than any of that, it isn't raised. And if I were here on a direct appeal or I were the petitioner, I were representing a petitioner, if Mr. Madrid had lost in the district court and I hadn't raised this issue, I find it hard to believe this Court would be entertaining it and say, well, should we remand so you could have another bite at the apple? That's not what happened. It's why the frat rule exists. It's why all this. There's so much law from this Court about we don't entertain issues not raised on appeal. And we don't send them back so that she gets another shot at raising it on appeal. It was raised before the district court. She had a decision. She could have raised an objection to that decision on the merits of the decision instead of on the issues she chose. And she chose not to. And whatever her strategy was in choosing that, she stuck with it. Thank you. Thank you, counsel. You have a little less than a minute left. Thank you, Your Honor. One question I would like to answer differently than Ms. Knox is that there is case law that's inconsistent with the district court's decision. The district court relied on the Hayward panel decision, which did a thorough review of the facts as this Court is engaging in today. But when Hayward went on bonk, there isn't that detailed recitation of the evidence. The end of the decision shows that the court looked. Was the sum evidence test applied? Yes, it was. There's some evidence. We're done. That's different than what happened here. This district court relied on the panel decision, engaged in a far more reaching examination of the evidence, the same kind you're doing there. And I recognize I'm preserving an argument that this Court may not be willing to hear in this context. But it's correct under AEDPA. And that was crystallized when the court said, should we remand to look through the correct lens based on after-decided case law? That confounds AEDPA, which says we look at what did the state court do at the time of its decision. Counsel, we understand your position, and you have exceeded your time. Thank you. We appreciate the arguments that have been presented, and the case is submitted for decision.
judges: Graber, Callahan, Bea